**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| HOME SOLUTIONS BUILT BETTER LLC, | ) ) ) | |
| *Plaintiff,* | ) ) | Case No. _____ |
| vs. | ) ) | **JURY TRIAL DEMANDED** |
| SEALED UTILITY PARTS CO. INC., d/b/a SUPCO, | ) ) ) | |
| *Defendant.* | ) ) | |

<u>**COMPLAINT**</u>

Plaintiff Home Solutions Built Better LLC ("Home Solutions") for its causes of action against Defendant Sealed Utility Parts Co. Inc., d/b/a Supco ("Supco"), alleges as follows:

Introduction

1. This is an action for willful trademark infringement of a federally registered mark (direct and contributory), unfair competition and willful direct and contributory infringement of an unregistered mark (federal and state), false designation of origin (federal and state), and trademark dilution in violation of Missouri statutes.

2. Since at least 2005, Plaintiff Home Solutions has marketed and sold dryer vent cleaning tools and kits under its distinctive, federally registered, and incontestable LINTEATER® trademark (the "LintEater Mark"), as well as related product designations including RLE202, RJR601, R4203616, R3203612, and RT004 (the "LintEater Product Designations"). Through decades of continuous and exclusive use, substantial investment in advertising and marketing, and widespread distribution through major retail and online channels, consumers nationwide have come to recognize the LintEater Mark and LintEater Product Designations as identifying Home Solutions as the single source of these products.

1

3. Defendant Sealed Utility Parts Co. Inc., d/b/a Supco ("Supco"), is a former authorized distributor of Home Solutions' LintEater products. Following the termination of its authorized distributorship, Supco began manufacturing, marketing, and selling its own competing dryer vent cleaning tools and kits using the LintEater Mark and LintEater Product Designations—without Home Solutions' authorization, approval, or consent (the "Accused Products"). Supco has also knowingly supplied these infringing products to its own authorized third-party distributors and resellers, with actual knowledge that those third parties were marketing and selling the products using the LintEater Mark and LintEater Product Designations, thereby contributing to the infringing conduct. Supco's infringement is willful and deliberate.

4. As of the filing of this Complaint, Supco and its distributors continue to use the LintEater Mark and LintEater Product Designations in commerce, causing confusion, mistake, and deception among consumers as to the source, origin, and sponsorship of the Accused Products, and causing irreparable injury to Home Solutions' goodwill and reputation. Home Solutions brings this action to stop Supco's ongoing infringement and to recover damages for the harm already caused.

## PARTIES

5. Home Solutions is a limited liability company duly organized and existing under the laws of the State of Missouri, having an office and place of business at 10950 Linpage Place, St. Louis, MO 63132.

6. Upon information and belief, Supco is a corporation duly organized and existing under the laws of the State of New Jersey, having an office and place of business at 2230 Landmark Place, Allenwood, New Jersey 08736.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1367, and 1338 because it involves substantial claims arising under the federal

2

Lanham Act and related claims under Missouri state law.

8. Supco has engineering and manufacturing facilities throughout the country and distributors within this judicial district.

9. This Court has personal jurisdiction over Supco because, among other things, Supco has established minimum contacts within the forum such that the exercise of jurisdiction over Supco will not offend traditional notions of fair play and substantial justice. Supco conducts business throughout the United States and actively transacts business in this judicial district by selling its products in this district directly through websites, distributors, retailers and retailers' websites, and through numerous distributors located in this district. Upon information and belief, Supco has over 20 distributors within this judicial district. Supco advertises, markets, offers for sale, and sells its products in this judicial district.

10. In addition to Supco's continuous and systematic conduct of business in Missouri, the Court has specific jurisdiction over Supco because the causes of action against it in this Complaint arose from or are connected with Supco's purposeful acts committed in this district in Missouri, including engaging trademark infringement, unfair competition, and dilution.  Upon information and belief, Supco has sold the accused products in this district.  In addition, Supco has sent numerous letters to Home Solutions' counsel in this judicial district regarding the accused product and wrongful activities detailed in this Complaint.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Supco transacts business in this district and, upon information and belief, a substantial part of the events giving rise to Home Solutions' claims occurred, and are continuing to occur, in this district.

## FACTUAL BACKGROUND
### Home Solutions' Business and Protected Trademarks

12. Home Solutions is a well-known manufacturer of home protection products, including

chimney and venting components, fireplace and wood-burning accessories, heating systems, cleaning tools, wildlife exclusion products, and outdoor living products.

13. Home Solutions and its predecessor entities have spent seventy-five years building a brand and reputation for superior and innovative products designed to improve the life of its customers' home.  As a result, consumers have come to recognize the Home Solutions brand, together with its various sub-brands and product lines, as indicators of innovation, quality, and reputable business practices.

14. Home Solutions protects its brand and reputation through both U.S. and international trademark registrations. In addition, Home Solutions has consistently used its marks in commerce over time, thereby establishing and reinforcing common law trademark rights for those marks that are not formally registered.

15. Since at least 2005, Home Solutions and its predecessor entities have marketed and sold dryer vent cleaning tools and kits using the distinctive LintEater Mark, and the following related marks and sub-brands: LintEater Jr., LintEater Extension Rods, LintEater Retrieval Tool, and LintCatcher.

16. Home Solutions owns an incontestable U.S. trademark registration for the LintEater Mark, in connection with power tools, namely, rotary duct cleaning tools and attachments for use therewith. A true and correct copy of Registration No. 3134114 is attached as Exhibit A.

17. In addition to the LintEater Mark, Home Solutions has marketed and sold its dryer vent cleaning tools using the following related product designations: **RLE202** for the original LintEater, **RJR601** for the LintEater Jr., **R4203616** for the LintCatcher, **R3203612** for the 12' Extension Kit, and **RT004** for the Retrieval Tool (the "LintEater Product Designations"). The LintEater Product Designations are displayed prominently on LintEater products as well as in Home Solutions'

4

online advertising, as shown below.

**LINTEATER® DRILL POWERED ROTARY DRYER VENT CLEANING KIT**

- **LintEater® (RLE202) Includes:** Four (4) 3' Flexible Screw-Connect Nylon Rods, a Blockage Removal Tool, a Vacuum Adapter, a 4" Self-Feeding Auger Brush, a 2 ½" Lint Trap Brush, a Dryer Adapter, and an Operator Manual
- **LintEater® Jr. (RJR601) Includes:** Two (2) 18" Flexible Screw-Connect Nylon Rods, a 2 ½" Lint Trap Brush, and a 4" Self-Feeding Auger Brush
- **LintCatcher™ (R4203616)** Attaches to the End of Your Dryer Vent to Collect Lint as You Clean
- **12' Extension Kit (R3203612)** Available

Home Solutions website, https://www.hy-c.com/gardus-product/linteater-dryer-vent-cleaning-kit, last accessed April 9, 2026.

18. Home Solutions has used the LintEater Product Designations in a substantially consistent and continuous manner in connection with its LintEater products for many years. Through its long-standing, exclusive, and consistent use in commerce, substantial expenditures in advertising and marketing, widespread distribution through retail and online channels, and significant sales volume, the LintEater Product Designations have become closely associated with Home Solutions and its LintEater brand and have acquired distinctiveness and source-identifying significance among consumers.

19. The LintEater Mark and LintEater Product Designations have been recognized by consumers nationwide as a source of high-quality dryer cleaning tools and kits.

20. Home Solutions' dryer cleaning tools are widely distributed and sold throughout the United States via online sales channels and in physical retail locations, including major nationwide home improvement stores, resulting in broad market penetration and consumer exposure. Home Solutions also sells its dryer cleaning tools and kits directly on its own website and through numerous e-commerce platforms, social media marketplaces, and YouTube videos.

CORE/3512281.0022/242031822.1

21. Home Solutions extensively advertises its LintEater dryer cleaning kits on its social media accounts, its website, and in other media utilizing the LintEater Mark and LintEater Product Designations.

22. Home Solutions maintains strict quality control standards for its LintEater dryer cleaning tools and kits.

**Supco and its Use of the LintEater Mark and LintEater Product Designations**

23. Defendant Supco is a manufacturer, supplier, and distributor of HVAC and appliance parts, components, and tools.

24. Supco is a former distributor of Home Solutions and now directly competes against Home Solutions in the same sales channels.

25. While acting as an authorized distributor of Home Solutions, Supco distributed Home Solutions' products marketed and sold products under the LintEater Mark and LintEater Product Designations. Specifically, Supco distributed the following products for Home Solutions: the LintEater RLE202, the LintEater Jr. RJR601, and the R3203612 12' Extension Kit.

26. Following the termination of the authorized distribution relationship, Supco has manufactured, marketed, distributed, offered for sale, and sold competing dryer vent cleaning tools and kits (the "Accused Products") using the LintEater Mark and LintEater Product Designations without the authorization, approval, or consent of Home Solutions.

27. Supco began selling its competing dryer vent cleaning tools and kits using the LintEater Mark and/or LintEater Product Designations after its distribution relationship ended with Home Solutions.

28. In certain instances, Supco sold products bearing the LintEater Product Designations and advertised the products using Home Solutions registered LintEater Mark and LintEater Product

CORE/3512281.0022/242031822.1

Designations.

29. In other instances, Supco sold products bearing the LintEater Product Designations and advertised the products using only the LintEater Product Designations.

30. Supco used the LintEater Mark and LintEater Product Designations with the specific intent to trade on Home Solutions' goodwill and to cause confusion, mistake, or deception among consumers as to the source, origin, sponsorship, affiliation, or approval of such products.

31. Supco's use of the LintEater Product Designations to advertise its own competing vent cleaning tools and kits (as shown below) is likely to confuse customers into believing Supco is affiliated with Home Solutions, or that the products sold by Supco are in fact genuine LintEater products.



Supco website,
https://supco.com/web/supco_live/product.php?department=6011&category=66, last
accessed April 9, 2026.

32. Supco has no legitimate reason to use the LintEater Product Designations other than to confuse or deceive customers into believing that the products sold by Supco are in fact genuine LintEater products.

7

33. In addition to directly marketing and selling products under the LintEater Mark and LintEater Product Designations, Supco has knowingly supplied its competing products to its authorized third-party distributors, with actual or constructive knowledge that those distributors would use the LintEater Mark and LintEater Product Designations in marketing and selling the products, thereby contributing to the infringing conduct.

34. Supco has and continues to supply vent cleaning tools and products to its authorized distributors whom it knows or has reason to know are engaging in trademark infringement by marketing and selling the products using the LintEater Mark and LintEater Product Designations.

35. Supco's unauthorized use of the LintEater Mark and LintEater Product Designations, and its continued supply of products to distributors engaging in such use, has caused and is likely to continue to cause confusion, mistake, and deception among consumers as to the source, origin, sponsorship, affiliation, or approval of the products, constituting trademark infringement, unfair competition, and false designation of origin under the Lanham Act and resulting in damage to Home Solutions' goodwill and reputation.

**Supco's Notice of Home Solutions' Rights and Continued Willful Conduct**

36. On August 23, 2024, Home Solutions' counsel sent a letter notifying Supco of its incontestable registration for LintEater® and its rights in the LintEater Product Designation. Home Solutions requested that Supco stop its infringement and provide an accounting of its sales in connection with that infringement. *See* Exhibit B, Aug. 23, 2024, Letter, the substance of which is incorporated herein.

37. On October 2, 2024, Supco responded and agreed to remove the LintEater Mark from its Supco company website, agreed to instruct its customers to stop using the LintEater Mark and LintEater Product Designations, and agreed to stop using **RLE202** on its own product packaging.

8

Supco, however, refused to provide an accounting of its infringing sales.  *See* Exhibit C, Oct. 2, 2024, Letter, the substance of which is incorporated herein.

38. On October 16, 2024, Home Solutions responded and noted that distributors and resellers were still using the LintEater Mark in connection with the sale of Supco's products and were also still using the LintEater Product Designations.  Again, Home Solutions requested an accounting of Supco's infringing sales.  *See* Exhibit D, Oct. 16, 2024, Letter, the substance of which is incorporated herein.

39. On December 23, 2024, Home Solutions once again notified Supco that it, and its authorized distributors and/or resellers, were still using the LintEater Product Designations in connection with the Supco products.  *See* Exhibit E, December 23, 2024, Letter, the substance of which is incorporated herein.

40. On January 30, 2025, Supco—now through outside counsel—reversed its prior representation that it would cease using the LintEater Product Designations.  Rather than honor its earlier commitment, Supco refused to stop using the designations. *See* Exhibit F, January 30, 2025, Letter, the substance of which is incorporated herein.

41. On May 29, 2025, Home Solutions notified Supco that its distributors and/or resellers were continuing to use the LintEater Mark and LintEater Product Designations in connection with the sale of Supco products.  This correspondence also pointed out that Supco had resumed use of the LintEater Product Designations, despite its prior representations that it would stop using the LintEater Product Designations.  *See* Exhibit G, May 29, 2025, Letter, the substance of which is incorporated herein; Exhibit H, July 13, 2025, Letter, the substance of which is incorporated herein (asking for a response to the May 29, 2025, letter and pointing out additional instances of infringing use and identifying a distributor, McCombs Supply Co., Inc., as an example of a Supco distributor

impermissibly using the LintEater Mark and LintEater Product Designations.).

42. On July 15, 2025, Supco responded and claimed all infringing uses raised by Home Solutions are by a third party and refused to take action to stop the infringement. *See* Exhibit I, July 15, 2025, Letter, the substance of which is incorporated herein.

43. Home Solutions responded on August 21, 2025, noting that by continuing to supply distributors, customers, and other third parties—with full knowledge of the infringing uses of the LintEater Mark and LintEater Product Designations—that Supco itself was liable for trademark infringement. Again, Home Solutions' counsel asked for an accounting of Supco's infringing sales. *See* Exhibit J, August 21, 2025, Letter, the substance of which is incorporated herein.

44. On September 10, 2025, Supco responded and agreed to stop using the LintEater Product Designations on its own products, but again refused to take action with third parties that it knew were using the LintEater Mark and LintEater Product Designations. *See* Exhibit K, Sept. 10, 2025, Letter, the substance of which is incorporated herein.

45. After receiving a short follow-up e-mail on September 30, 2025, from Supco, Home Solutions responded on October 3, 2025, pointing out additional infringing uses of the LintEater Mark and LintEater Product Designations on Amazon.com by third parties.

46. Upon information and belief, Supco deliberately chose to use the LintEater Mark and LintEater Product Designations in order to unlawfully trade on the goodwill, reputation, and fame established by Home Solutions in its LintEater Mark and LintEater Product Designations and to unjustly enrich itself at the expense of Home Solutions.

47. Upon information and belief, Supco has willfully and intentionally sought to imply an association with Home Solutions in using the LintEater Mark and LintEater Product Designations.

48. Despite notice and knowledge of Home Solutions' concerns, Supco has continued use of

CORE/3512281.0022/242031822.1

the LintEater Mark and LintEater Product Designations.

49. Supco's pattern of conduct and its refusal to respect Home Solutions' trademark rights, evidenced in the correspondence attached, confirm that Supco deliberately and willfully selected its LintEater Product Designations and the LintEater Mark in order to improperly trade on Home Solutions' investment in and fame and goodwill associated with the LintEater Product Designations and LintEater Mark.

50. The false and misleading nature of Supco's conduct is compounded by Supco's former role as an authorized distributor of Home Solutions' LintEater products. Consumers who previously purchased genuine LintEater products from Supco under the LintEater Mark and LintEater Product Designations are particularly likely to be confused into believing that a continuing business relationship, sponsorship, or affiliation exists between Supco and Home Solutions when encountering Supco's competing product under the same designation.

51. Supco's continuing conduct constitutes an ongoing threat to Home Solutions. Home Solutions has sustained and will continue to sustain irreparable injury as a direct result of Supco's conduct, injury that is not wholly compensable by an award of monetary damages. Unless Supco is restrained and enjoined from engaging in its wrongful conduct, Home Solutions will continue to suffer irreparable injury.

## COUNT I: DIRECT TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114(1))

52. Home Solutions realleges and incorporates by reference each and every allegation in the preceding paragraphs.

53. Home Solutions' LintEater Mark is registered on the Principal Register of the United States Patent and Trademark Office for dryer cleaning products.

54. The LintEater Mark is distinctive and valid.

CORE/3512281.0022/242031822.1

55. Home Solutions has invested substantial time, effort, and financial resources promoting its LintEater Mark in connection with the marketing and sale of its goods in interstate commerce. As a result, the consuming public recognizes the LintEater Mark and associates it with Home Solutions.

56. Supco had constructive notice of the LintEater Mark by virtue of its federal registration under 15 U.S.C. § 1072.

57. Without any authorization or license from Home Solutions, Supco has knowingly and willfully used, and continues to use, the LintEater Mark and LintEater Product Designations in connection with the manufacture, marketing, distribution, offer for sale, and sale of the Accused Products, including through its website and e-commerce site.

58. Supco's use of the LintEater Mark in connection with Accused Products is likely to cause confusion or mistake or to deceive consumers into believing that Home Solutions is the source of the goods.

59. Supco's acts described herein constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

60. As a direct and proximate result of Supco's direct trademark infringement, Home Solutions has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Supco has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

61. Supco's acts of trademark infringement will cause further irreparable injury to Home Solutions if Supco is not restrained by this Court from further violation of Home Solutions' rights. Home Solutions has no adequate remedy at law.

### COUNT II: CONTRIBUTORY TRADEMARK INFRINGEMENT
#### (15 U.S.C. § 1114(1))

62. Home Solutions realleges and incorporates by reference each and every allegation in the

CORE/3512281.0022/242031822.1

preceding paragraphs.

63. Since at least August 24, 2024, Supco was aware that its authorized distributors were using the LintEater Mark in connection with the sale of Supco products. Supco was aware these uses were without Home Solutions' permission.

64. Since at least August 24, 2024, Supco was aware that its distributors were using the LintEater Product Designations in connection with the sale of Supco products. Supco was aware these uses were without Home Solutions' permission.

65. Since at least August 24, 2024, Supco was aware that third-party resellers were using the LintEater Mark in connection with the sale of Supco products. Supco was aware these uses were without Home Solutions' permission.

66. Since at least August 24, 2024, Supco sold products to third-party resellers that it knew were using the LintEater Mark in connection with the sale of Supco products.

67. Since at least August 24, 2024, Supco was aware that third-party resellers were using the LintEater Product Designations in connection with the sale of Supco products. Supco was aware these uses were without Home Solutions' permission.

68. Since at least August 24, 2024, Supco sold products to third-party resellers that it knew were using the LintEater Product Designations in connection with the sale of Supco products.

69. As recently as April 2, 2026, Supco had not taken any action to correct the infringing listings on Amazon.com, with its own third-party distributors and/or resellers, or on its own website. *See* Exhibit L, collection of websites, the substance of which is incorporated herein.

70. Upon information and belief, Supco has control over how its distributors market and sell Supco products, including the Accused Products.

71. The sale of Supco products by third parties utilizing the LintEater Mark and/or LintEater

13

Product Designations benefits Supco.

72. Supco's acts described herein constitute contributory trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

73. Supco's acts of contributory trademark infringement will cause further irreparable injury to Home Solutions if Supco is not restrained by this Court from further violation of Home Solutions' rights. Home Solutions has no adequate remedy at law.

## COUNT III: UNFAIR COMPETITION, PASSING OFF, & FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A))

74. Home Solutions realleges and incorporates by reference each and every allegation in the preceding paragraphs.

75. Supco manufactures, distributes, advertises, offers for sale, or sells dryer cleaning kits in commerce throughout the United States using one or more words (e.g., the LintEater Mark), terms, names (e.g., the LintEater Product Designations), or symbols, or any combination thereof, that constitute a false or misleading designation of origin, false or misleading description of fact, or false or misleading representation of fact.

76. By misappropriating and using Home Solutions' LintEater Product Designations, Supco misrepresents and falsely describes to the general public the origin and source of the Accused Products and creates a likelihood of confusion by purchasers as to the source of the products.

77. Supco's unauthorized and unlicensed manufacturing, advertising, distributing, offering for sale, and/or selling of the Accused Products in interstate commerce creates express and implied misrepresentations that those goods were created, authorized, or approved by Home Solutions, which is likely to cause consumer confusion, mistake, or deception as to the affiliation, connection, or association of Supco with Home Solutions, or as to the origin, sponsorship, or approval of Supco's products by Home Solutions.

14

78. Upon information and belief, Supco has manufactured, distributed, advertised, sold, and offered its Accused Products for sale in interstate commerce using the LintEater Product Designations with the intention of misleading, deceiving, or confusing consumers as to the origin of its goods and of trading on Home Solutions' reputation and goodwill. Supco's conduct is intentional and willful.

79. Supco's acts described herein constitute passing off, unfair competition, and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A),

80. As a direct and proximate result of Supco's violations of 15 U.S.C. § 1125(a)(1)(A), Home Solutions has suffered and will continue to suffer irreparable loss of income, profits, and goodwill, and Supco has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

81. Supco's wrongful acts, unless and until enjoined and restrained by order of this Court, will cause further irreparable injury to Home Solutions. Home Solutions has no adequate remedy at law.

### COUNT IV: MISSOURI UNFAIR COMPETITION

82. Home Solutions realleges and incorporates by reference each and every allegation in the preceding paragraphs.

83. Supco's unauthorized marketing and distribution of the Accused Products in interstate commerce constitutes common law unfair competition because such use has confused, or is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval by Home Solutions of Supco's products. Consumers are likely to believe, for example, that Supco, and its Accused Products, originate with, are approved by, sponsored by, connected with, or otherwise related to Home Solutions.

84. As a direct and proximate result of Supco's acts of unfair competition, Home Solutions has

CORE/3512281.0022/242031822.1

suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Supco has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

85. Supco's activity constitutes unfair competition in violation of the common law of the State of Missouri. Supco's actions have caused, and will continue to cause, serious and irreparable injury for Home Solutions unless enjoined by this Court, including within the State, for which Home Solutions has no adequate remedy at law.

86. Supco's actions have been willful and have caused, and continue to cause, Home Solutions irreparable harm, justifying the imposition of injunctive relief.

87. As a direct and proximate result of Supco's conduct, Home Solutions has suffered, and will continue to suffer, irreparable harm.

## COUNT V: MISSOURI DILUTION (BLURRING)

88. Home Solutions realleges and incorporates by reference each and every allegation in the preceding paragraphs.

89. Supco's use of the LintEater Mark and/or LintEater Product Designations diminishes the ability of the consumer to distinguish between Home Solutions and Supco.

90. The Missouri anti-dilution statute provides that "[l]ikelihood of injury to business reputation or dilution of the distinctive quality of a mark . . . shall be ground for injunctive relief." Mo. Rev. Stat. § 417.061.

91. Supco has engaged in dilution under Mo. Rev. Stat. § 417.061.

92. Supco's actions have been willful and have caused, and continue to cause, Home Solutions irreparable harm, justifying the imposition of injunctive relief.

93. As a direct and proximate result of Supco's conduct, Home Solutions has suffered, and will continue to suffer, irreparable harm.

16

**Request For Relief**

WHEREFORE, in consideration of the foregoing, Home Solutions respectfully requests that the Court enter its orders and judgment as follows:

a. Entering judgment in Home Solutions' favor and against Supco on all Counts of this Complaint;

b. Declaring that Supco's trademark infringement, unfair competition, and dilution have been willful and declaring this case exceptional and awarding treble damages;

c. Enjoining, permanently, Supco, and each of its respective officers, agents, servants, employees, and attorneys, and all of those persons in active concert or participation with it:

i. From using the LintEater Mark or LintEater Product Designations, or any name or other identification that is confusingly similar, in connection with the marketing or sale of the Accused Products;

ii. From any further acts of trademark infringement, or unfair competition in violation of 15 U.S.C. §§ 1114, 1125(a) or Missouri common law, and from any further acts of dilution under Mo. Rev. Stat. § 417.061;

d. Awarding Home Solutions any profits derived from Supco's trademark infringement, unfair competition, or dilution;

e. Awarding Home Solutions its actual damages from Supco's trademark infringement, unfair competition, or dilution;

f. Awarding Home Solutions its costs, prejudgment and post judgment interest;

g. Awarding Home Solutions its attorneys' fees; and

h. Granting Home Solutions such other and further relief as the Court may deem just

CORE/3512281.0022/242031822.1

and proper in the circumstances.


Dated: April 23, 2026                                  Respectfully submitted,

                                                       **STINSON LLP**

                                                       By: */s/ B. Scott Eidson*
                                                       B. Scott Eidson, #57757MO
                                                       Julie C. Scheipeter, #65978MO
                                                       Zachary T. Buchheit, #71816MO
                                                       7700 Forsyth Blvd., Suite 1100
                                                       St. Louis, MO 63105-1821
                                                       314.863.0800 Main
                                                       314.863.9388 (facsimile)
                                                       scott.eidson@stinson.com
                                                       julie.scheipeter@stinson.com
                                                       zachary.buchheit@stinson.com

                                                       **ATTORNEYS FOR PLAINTIFF HOME
                                                       SOLUTIONS BUILT BETTER LLC**

CORE/3512281.0022/242031822.1